Palmer v Spadone-Palmer (2021 NY Slip Op 00122)





Palmer v Spadone-Palmer


2021 NY Slip Op 00122


Decided on January 12, 2021


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 12, 2021

Before: Renwick, J.P., Kern, Mazzarelli, Kennedy, Shulman, JJ. 


Index No. 305027/12 Appeal No. 12824 Case No. 2020-01157 

[*1]Mark E. Palmer, Plaintiff-Respondent,
v
Melina Spadone-Palmer, Defendant-Appellant.


The Edelsteins, Faegenburg & Brown, LLP, New York (Adam Edelstein of counsel), for appellant.
Gassman Baiamonte Gruner, PC, Garden City (Rosalia Baiamonte of counsel), for respondent.



Resettled order for modification of support (postjudgment), Supreme Court, New York County (Alice Schlesinger, J.H.O.), entered January 23, 2020, which, after a trial, inter alia, modified the parties' May 30, 2014 settlement agreement by terminating plaintiff husband's obligation to pay spousal maintenance, terminating his obligation to maintain life insurance for defendant wife's benefit, awarding him downward modification of his obligations as to basic child support and add-ons for the parties' three minor children, and denied the wife's request for reimbursement of certain health insurance premiums, medical expenses, and counsel fees, unanimously affirmed, without costs.
An order or judgment incorporating an agreement providing for maintenance will not be modified without a showing of extreme hardship (see Domestic Relations Law § 236[B][9][b][1]; Shelia C. v Donald C., 5 AD3d 123, 123-124 [1st Dept 2004]). Here, the court properly found that the husband would suffer extreme hardship if held to the maintenance obligations under the settlement agreement.
The wife's primary argument is that the husband's claims of extreme hardship were undermined by the proof of his lavish lifestyle, including significant discretionary expenditures for himself and his then-girlfriend. The wife makes a compelling presentation that the husband did in fact liberally indulge in this regard, but does not show reason to question that, as the trial court observed, such expenditures were funded by disability payments he received from April 2015 through March 2017, a source of funding that came to an undisputed end. As the court recognized, the husband's reckless spending of these amounts was unjustifiable, and should have been used towards the support of his wife and children. However, and most relevant to the hardship analysis, because these payments came to an end, they are not illustrative of the husband's overall financial situation, which considerably worsened from where it had been at the time of the settlement agreement.
The court, moreover, partially compensated the wife for the husband's wrongful expenditures by declining to award him a credit for child support payments in excess of his court-ordered obligations during the period from April 2015 through June 2018. The husband asserts, and the wife does not dispute, that he paid a total of $238,725.81 in such payments.
The wife argues the court also misapprehended the husband's financial situation given income he received from Theseus Strategy Group, but we find the wife has not shown reason to revisit the court's determination that Theseus was most properly accounted for by ascribing $305,000 annual income to the husband, which augmented his stated income of $185,000 by another $120,000, based on the amount of loans he paid back to himself from Theseus.
The husband asserts that a major Theseus receipt of $600,000 was a nonrecurring transaction, and the wife does not show otherwise. She also overstates [*2]the certainty of the value of Theseus's coinvestment with MatlinPatterson. She cites to the husband's testimony that the investment might be worth as much as $400,000, but although he expressed hope for such value, its actual value and when he might realize it were far more speculative.
Nor does the wife show reason to revisit the court's determination that the adversity to have befallen the husband was not voluntary, and its finding that, in turn, he was entitled to an extreme hardship determination as to maintenance, and to a finding that, as to child support, he had established a substantial change in circumstances due to no fault of his own (see Domestic Relations Law § 236B[9][b][2]; compare Matter of Richard K v Deborah K, 154 AD3d 489 [1st Dept 2017]). The court explained why it was persuaded by the testimony of the husband and his treating psychologist that the husband's life and career had plummeted due to forces beyond his control. His extensive history of childhood abuse and other trauma did, as the wife contends, predate the settlement agreement, but the court found the husband and his psychologist credible on the point of how the memories of such traumas had been repressed, and credible as to the detrimental effects on the husband's life and career caused by their resurfacing, which effects included panic attacks, PTSD, and abuse of alcohol to an extreme degree. There exists no basis to disturb these credibility determinations (e.g. Matter of Minerva R. v Jorge L.A., 59 AD3d 243 [1st Dept 2009]).
The wife tries to cast doubt on the psychologist's credentials and credibility, and on the credibility of the husband as to these issues, but she neither called an expert to present competing testimony at trial nor sought an independent mental health examination of the husband before trial. Furthermore, the wife argues the husband did not make good faith efforts to seek new employment after termination from MatlinPatterson (see Matter of Gharachorloo v Regeer, 173 AD3d 1025 [2d Dept 2019]), but ignores that, by virtue of his guilty plea, he was disbarred and precluded from possessing any financial series licenses for 10 years, and his options were accordingly limited.
The court reasonably imputed $305,000 in annual income to the wife. She does not deny she was able to obtain two different employment positions, earning about $450,000 at each. Her arguments concerning life insurance are also unavailing and, contrary to her contention, the court did not modify the husband's life insurance obligations as to the children. She does not explain the need for life insurance to secure the husband's maintenance obligations to her at this point. The court's remaining determinations as to life insurance were its sound effort to secure the husband's child support obligations to the agreed-on amount of $3 million in death benefits, and ensure that the premiums on those policies were paid by the husband, not the wife. She argues that there are insurance [*3]policies held in trust "as a completely separate matter" from those contemplated in the settlement agreement, but does not show that the husband agreed to maintenance of such polices, or under what conditions. Accordingly, the court properly held that such policies should terminate.
The wife argues the court wrongly found that she failed to prove that certain health insurance premiums and unreimbursed health care expenses she paid for the children were owed to her, but does not address the husband's referral to evidence that, he claims, showed he reimbursed her for all such amounts.
We have considered the wife's remaining arguments, including her challenge to the denial of her request for counsel fees, and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 12, 2021